**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**THE SAMUEL LAW FIRM**
Michael Samuel (MS 7997)
Andrew Beresin (AB 0603)
1441 Broadway
Suite 6085
New York, New York 10018
(212) 563-9884
michael@thesamuellawfirm.com

*Attorneys for Plaintiff*

| | |
|---|---|
| TIYA L. McIVER,<br><br>            Plaintiff,<br><br>        - vs. -<br><br>THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, COLUMBIA UNIVERSITY SCHOOL OF PROFESSIONAL STUDIES CAREER DESIGN LAB, KELLY AHN, ZELON E. CRAWFORD, DAVID SLOTNICK and DIANE SPIZZIRRO,<br><br>            Defendants. | CASE NO. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff TIYA L. McIVER, by and through her undersigned attorneys, for her complaint against defendants, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK ("Columbia" or the "University"), COLUMBIA UNIVERSITY SCHOOL OF PROFESSIONAL STUDIES CAREER DESIGN LAB, ZELON E. CRAWFORD, KELLY AHN, DAVID SLOTNICK and DIANE SPIZZIRRO, (collectively, "Defendants"), alleges as follows:

1

## NATURE OF THE ACTION

1.   Plaintiff Tiya L. McIver is a 49-year-old, black female career development coach at Columbia University's School of Professional Studies ("SPS") Career Design Lab (hereinafter "CDL" or "Columbia CDL").

2.   Ms. McIver, presently an Associate Director at CDL, has an unblemished track record of professional achievement and success spanning more than twenty-three years at three large private universities – the University of Pennsylvania, Drexel University, and, since February 2018 at Columbia University's CDL.

3.   Throughout 2018, 2019, 2020 and 2021, Ms. McIver consistently and unfailingly received high work performance ratings at her biannual performance reviews at Columbia CDL.

4.   Those performance reviews recognized Ms. McIver's work as exemplary and praised her strong leadership, strategic thinking and ability to drive outcomes that directly supported CDL's core mission.

5.   During her first four years at Columbia CDL, Ms. McIver successfully demonstrated, in the eyes of those she directly reported to, based on their written reviews of her work, the capacity to lead high-impact initiatives with commitment to excellence, and established herself as a valued and indispensable member of the CDL team.

6.     Beginning in mid-2022, however, Ms. McIver faced racial discrimination and a hostile, toxic work environment at Columbia's CDL, where she was bullied, demeaned, discriminated against, harassed, undermined and retaliated against by Columbia CDL senior leadership, including by each of the individually named defendants herein.

7.     Despite being an accomplished, well-educated and talented, professional black woman with significantly more experience than many of the non-black colleagues she worked alongside at Columbia CDL, it was made clear to Ms. McIver that at Columbia CDL, she was being held to different standard because she was black.

8.     Beginning as early as 2021, signs of discriminatory treatment by CDL senior leadership were evidenced in the form of misattributions of Ms. McIver's work to the credit of white CDL colleagues, her exclusion from key leadership discussions, and her being subjected to stricter standards of oversight.

9.     At the same time, white CDL colleagues were granted access to decision-making forums which were made inaccessible to Ms. McIver and other black and other minority colleagues, effectively restricting their ability to contribute to decision-making processes, undermining their authority with subordinates, and stifling their career growth within CDL.

10.   During the past four years, white CDL staff members also received promotions much more easily, received better pay, and had more lenient performance review standards applied to their work compared to more qualified, minority CDL staff members, especially those who are over 40 years of age.

11.   Senior CDL leadership, namely defendant Kelly Ahn, even instructed a subordinate to lower Ms. McIver's high performance review ratings, along with those of two other minority CDL staff members, because they would "cause unnecessary chaos".

12.   Ms. McIver was also demoted from responsibilities and subjected to deliberate, humiliating treatment by Defendants, at one point being told by defendant Zelon E. Crawford, in the presence of two white supervising directors (Kelly Ahn and Diane Spizzirro) that black women "have to work harder, be smarter", as Ms. Ahn and Ms. Spizzirro sat by in silence.

13.   Beginning in early 2023, Ms. McIver began to receive significantly lower biannual performance review ratings, despite having been presented with no critical feedback on her work during regular weekly meetings with her supervising directors during the preceding six months leading up to those biannual reviews.

14.   This discriminatory, hostile pattern of behavior on

the part of Defendants continued throughout 2022, 2023, and 2024, causing Ms. McIver to suffer severe anxiety to the point where she needed to take a medical leave of absence from CDL, which leave began in early 2024, most recently was extended to January 2, 2025, and has now been requested by Ms. McIver's treating therapist to be extended through March 2, 2025.

15.   Each of the individually named defendants herein were personally aware of, aided, abetted and participated in a pattern of intentional, discriminatory actions repeatedly taken against Ms. McIver during the course of the past three years of her employment at CDL, including express references to her race as being a meaningful factor in evaluating her work, conspiring to give her lower biannual performance review scores, and giving preferential treatment to non-minority CDL staff members relating to promotions and other working conditions at Columbia CDL as compared to standards applied to Ms. McIver and other black or Hispanic employees at CDL.

16.   During and within the applicable statutes of limitations periods, Ms. McIver complained repeatedly to her managers, to Columbia CDL senior leadership, to SPS Human Resources ("SPS HR") and finally to Columbia's Office of Equal Opportunity and Affirmative Action ("Columbia EOAA") but no corrective action was taken.

17.   Instead, senior leadership of CDL, including the

individually named defendants herein, retaliated against Ms. McIver repeatedly by, among other things, demoting/removing her responsibilities as an Associate Director at CDL, and even giving negative job references for her when she sought to apply for other positions at Columbia University outside of CDL.

18.    Still, throughout her Columbia CDL career from 2018 through 2024, prior to going out on medical leave, Ms. McIver valiantly worked to support the students she was tasked with coaching, and efforted to move her career forward, despite the racial discrimination, retaliation and hostile behavior she faced at Columbia CDL.

19.    Despite Ms. McIver's best efforts though, her career at Columbia CDL was derailed during 2022, 2023, and 2024, as she experienced demotions in her responsibilities, unequal pay, and reduced opportunities for promotion as compared to other, less qualified, non-Black, non-Hispanic colleagues at Columbia CDL who received "promised" promotions in responsibilities and increased rates of compensation during that same time period.

20.    In April 2024, based on these and other facts, described in greater detail below, Ms. McIver filed an online complaint with the United States Equal Employment Opportunity Commission ("EEOC") and in July 2024 the undersigned filed a

formal charge on her behalf with the EEOC (EEOC Charge #520-2024-06203).

21.   On November 18, 2024, the EEOC issued a Right-To-Sue letter to Ms. McIver (attached herewith as Exhibit "A").

22.   Ms. McIver now brings this lawsuit against the University, the Columbia CDL and individual defendants Kelly Ahn, Zelon E. Crawford, David Slotnick and Diane Spizzirro to recover lost wages, compensatory damages, punitive damages and liquidated damages, as well as declaratory and equitable relief to redress Columbia's pattern of unlawful race discrimination and retaliation that deprived Ms. McIver of advancement and promotion, subjected her to different working conditions, a hostile work environment and resulted in lower compensation during her employment, compared to lesser qualified employees at Columbia CDL, in violation of Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981 *et seq.;* Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 et seq. ("ADEA"); the New York State Human Rights Law, N.Y. Exec. Law § 296 ("SHRL"); the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101 *et seq.* ("CHRL"); and race-based pay discrimination in violation of New York Labor Law § 194 ("NYLL").

## **THE PARTIES**

23.    Plaintiff Tiya L. McIver ("Plaintiff") is an adult individual residing in New York City.

24.    Plaintiff has been employed at Columbia CDL on a fulltime basis since February 2018.

25.    Defendant THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK is a private, independent, non-sectarian institution of higher education located in Manhattan, New York.

26.    Upon information and belief, defendant Columbia has more than 500 employees.

27.    Defendant COLUMBIA UNIVERSITY CAREER DESIGN LAB, located at 729 Seventh Avenue, New York, New York, facilitates collaboration among students, alumni, employers, and faculty through holistic and innovative coaching and programming, empowering students to design and navigate agile, purpose-driven, and meaningful careers in a global and evolving workplace.

28.    At all times relevant herein, defendant THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, and COLUMBIA UNIVERSITY CAREER DESIGN LAB has been and continued to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a) and the New York Labor

Law.

29.    Defendant Kelly Ahn is an adult individual residing in the State of New York.

30.    Defendant Zelon E. Crawford is an adult individual residing in the State of New York.

31.    Defendant David Slotnick is an adult individual residing in the State of New York.

32.    Defendant Diane Spizzirro is an adult individual residing in the State of New York.

## JURISDICTION AND VENUE

33.    This Court has subject matter jurisdiction over Plaintiff's Title VII and Section 1981 claims pursuant to 28 U.S.C. §§ 1331 and 1343.

34.    This Court has supplemental jurisdiction over Plaintiff's SHRL, CHRL and NYLL state law claims pursuant to 28 U.S.C. § 1367.

35.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the acts, omissions and events giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## FACTS

36.    Ms. McIver, 49 years old, graduated from Lincoln University (Pennsylvania) in 1997, with a Bachelor of Science

degree in Early Childhood/Elementary Education, with a minor in psychology.

37.    In 2015, Ms. McIver earned a Master of Science degree in Organizational Dynamics from the University of Pennsylvania.

38.    Prior to earning her master's degree, Ms. McIver had worked as an on-campus recruitment manager for the University of Pennsylvania's Wharton School of Business from October 2001 until June 2014.

39.    From June 2014 until February 2018, Ms. McIver was employed as a senior developmental academic adviser at Drexel University's LeBow College of Business.  While at Drexel, Ms. McIver also taught as an adjunct professor.

40.    In February 2018, Ms. McIver began her employment at Columbia's Career Design Lab as an Assistant Director of Career Development, reporting to Diane Spizzirro, Director.

41.    While reporting to Ms. Spizzirro during 2018, 2019 and 2020, Ms. McIver established a track record of excellence in performance and made substantial contributions to the Columbia CDL, such as leading innovative programming, coaching initiatives and key development projects critical to CDL's mission and success.

42.    Ms. McIver's consistently strong performance throughout the first three years of her employment at CDL resulted in her promotion to Associate Director in July 2021,

still reporting to Ms. Spizzirro.

43.    Six months later, in her January 2022 performance review of Ms. McIver's work, Ms. Spizzirro wrote that "Tiya is a valued member of the Tech and Marketing Team...spearheaded the adoption of SPS wide platform...." and that Tiya "led the professional development and wellness team where she planned, developed and successfully executed three professional development events and two wellness events which exceeded team charter and goals."

44.    In that same January 2022 performance review of Ms. McIver's work, Ms. Spizzirro also wrote "Tiya co-led the HBCU team...led the development and execution of APAN virtual group coaching sessions...cultivated new employer relationships that created job opportunities for APAN students...mentored, managed and shared strategic development tips to colleague Kat Castro, resulting in Ms. Castro's being identified for a well-deserved off-cycle promotion...Tiya also taught the summer 2021 CDL Internship Course...the first time the internship was asynchronously taught successfully by one CDL staff member with no support or guidance on executing."

45.    In February 2022 Ms. McIver was reassigned to report to Greg Costanzo, Director, and even before issuing his first performance review of Ms. McIver's work, Mr. Costanzo was so impressed with her work that he informed her verbally that he hadn't realized how much good work she was doing for CDL and

that her compensation level should be higher.

46.    Ms. McIver's consistently exceptional performance reviews continued in June 2022 when Mr. Costanzo wrote, in his initial review of Ms. McIver, that "Tiya has moved into a major leadership role since the beginning of 2022 when she took over as the lead of the HBCU Fellowship and E-Mentorship programs, and she's done an incredible job....Tiya possesses great instincts and would shine as a formal leader on the team, as she is committed to serving students and making them career-ready. She seeks consensus from others often and works outside the department effectively...."

47.    However, shortly after issuing that initial review, Mr. Costanzo received an email from CDL Associate Dean Kelly Ahn, informing Mr. Costanzo that his performance review scores for Ms. McIver, as well his scores for two other CDL colleagues of Ms. McIver, each of whom are also minorities, were too high.

48.    In that email to Mr. Costanzo, Ms. Ahn wrote, "[y]our current supporting comments do not constitute high ratings that you have given...[t]his scoring will create unnecessary chaos, and I would like you to adjust the scores...."

49.    A few days later, Mr. Costanzo informed Ms. McIver of  Ms. Ahn's email, and explained to Ms. McIver that he had "pushed back" against Ms. Ahn's request to lower Ms. McIver's

performance review scores, emphasizing that the scores and his high praise of Ms. McIver's work were consistent with Ms. Spizzirro's previous performance review of Ms. McIver, pointing out that Ms. Spizzirro had written in January 2022 that "Tiya is passionate about her work and takes full ownership...is gifted at creating organizational structures to streamline processes...led the China Virtual Career Fair which was the largest attended virtual career event to date."

50.   Less than one month later, in July 2022, Mr. Costanzo left his employment at Columbia CDL, and Ms. McIver resumed reporting to Ms. Spizzirro.

51.   At that time, Associate Dean Ahn began a systematic dismantling of various organizational processes which Ms. McIver had created to manage the HBCU Fellowship Program, including full-time and internship trackers, communications initiatives for teaching fellows, and programming designed for fellows.

52.   Ms. Ahn also significantly reduced Ms. McIver's responsibilities within CDL by removing Ms. McIver as lead of the Professional Development & Wellness Team, the HBCU Fellowship Team, the E-Mentor Team, and the Alumni Small Group Coaching Team.

53.   Ms. Ahn demoted Ms. McIver from lead of the E-Mentor Team to a supporting role, despite the fact that under Ms. McIver's leadership the E-Mentor program had achieved record

levels of mentor/student matches during Spring 2022 as compared to the average number of matches achieved in each of the prior four semesters since the program's inception in 2020.

54.    The record level of E-Mentor program mentor/student matches during Spring 2022 was attributable in large part to Ms. McIver having transitioned the program from a manual process to an advanced system integrated with the SPS=wide platform, SPS Engage, which she accomplished independently during the winter break between the Fall 2021 and Spring 2022 semesters.

55.    Despite that success, Ms. Ahn removed Ms. McIver from lead of the E-Mentor program and reassigned the role to a less qualified, white CDL peer of Ms. McIver, humiliating Ms. McIver and diminishing her contribution to the E-Mentor program.

56.    Ms. Ahn also removed Ms. McIver from the Internship Course Team, the Student Intern Onboarding & Management Team and the Tech and Marketing Team.

57.    Ms. Ahn also communicated inconsistent messages to Ms. McIver during the summer of 2022, by sending separate emails to Ms. McIver within the span of a few days, the first email praising her work on an HBCU orientation event, and the second email criticizing Ms. McIver's management of the same event.

14

58. In response to the inconsistent pattern of communication from Ms. Ahn, and concerned about Ms. Ahn's actions throughout the summer of 2022, Ms. McIver emailed Ms. Ahn seeking clarification and guidance, and copied HBCU Fellowship leadership, including Senior Associate Dean Zelon Crawford.

59. A Zoom video conference was then held on September 9, 2022, led by Ms. Crawford, and attended by Ms. McIver, Ms. Ahn and Ms. Spizzirro.

60. It was during that Zoom video conference on September 9, 2022, that Ms. Crawford made the following statement, directed at Ms. McIver, the only other black woman present: "We have to work harder as black women, be smarter."

61. Ms. McIver was visibly shaken and became emotionally distraught upon hearing these blatantly biased, racially discriminatory remarks from Ms. Crawford, the most senior leader at Columbia CDL.

62. Notably, neither Ms. Ahn nor Ms. Spizzirro spoke up or in any other way demonstrated any intention to challenge Ms. Crawford's shocking remarks, making clear to Ms. McIver that at Columbia, a different standard was being applied to Ms. McIver because she is a black woman.

63. Following the disturbing remarks by Ms. Crawford, Ms. McIver composed herself and with the utmost professionalism, finished the Zoom call shortly thereafter.

64. In December 2022, Ms. McIver was assigned to report to David Slotnick, Director, despite his lack of supervisory experience.

65. At their initial meeting, Mr. Slotnick even remarked to Ms. McIver that he had no prior career coaching experience, direct managerial experience, or teaching experience.

66. Notably however, Mr. Slotnick is a former colleague of Kelly Ahn having worked with her at the Columbia Center for Career Education ("CCE").

67. Despite reassigning Ms. McIver to report to Mr. Slotnick however, Ms. Spizzirro, along with Ms. Ahn, retained project assignment responsibilities for Ms. McIver.

68. Following that initial meeting with Mr. Slotnick, Ms. McIver's new manager, despite his having no experience in career coaching, Columbia CDL's core competency, Ms. McIver met weekly with Mr. Slotnick through January 2023, during which weekly meetings Mr. Slotnick never once provided any negative feedback whatsoever on her work.

69. Then on February 8, 2023, during Ms. McIver's biannual performance review, her first with Mr. Slotnick, held via Zoom, with Ms. Spizzirro in attendance as well, Mr. Slotnick proceeded to give Ms. McIver negative performance review scores based on several false narratives related to her work during the preceding six months.

70.    Mr. Slotnick had no direct knowledge as to several of the false narratives regarding Ms. McIver's performance during the prior six months, since Mr. Slotnick had only joined SPS CDL on October 31, 2022.

71.    Upon information and belief, the false narratives Mr. Slotnick delivered to Ms. McIver during that February 8, 2023 biannual review were provided to him by Ms. Spizzirro and/or Ms. Ahn.

72.    In fact, when Ms. McIver immediately challenged Mr. Slotnick during the meeting and asked Ms. Spizzirro how she could possibly support the false, critical comments since Ms. Spizzirro knew Ms. McIver's work very well, Ms. Spizzirro immediately responded that the critical reviews of Ms. McIver were based on feedback from Ms. Ahn.

73.    Mr. Slotnick, in his position as Ms. McIver's supervisor thus only served as a "yes man" for Ms. Ahn, adopting as his own and delivering whatever performance reviews Ms. Ahn wished for Ms. McIver, similar to Ms. Ahn directing Mr. Costanzo to lower his performance reviews for Ms. McIver in June 2022.

74.    Although troubled by the events of her February 2023 performance review by Mr. Slotnick, Ms. McIver continued to perform her duties, maintaining her full and complete commitment to the mission of serving students, and during the several weeks that followed, received no further negative

feedback from Mr. Slotnick during their weekly meetings, just as she had not prior to the February 8, 2023, negative performance review

75.    Several weeks later, on March 22, 2023, Senior Associate Dean Zelon Crawford again referenced race in an email to Ms. McIver, relating to an issue regarding expense reimbursement for a hosted dinner, expressing concern about "not being fiscally responsible AND especially at a dinner for four Black students/staff!".

76.    Troubled by yet another express reference to race as a meaningful factor within Columbia CDL, Ms. McIver met with Columbia SPS HR representatives Merideth Kerby and Tonya Insani on April 3, 2023, to report on the discriminatory behavior and hostile work environment she was experiencing at the hands of CDL senior leadership.

77.    Just nine days later, on April 12, 2023, Ms. McIver was informed via Zoom conference with Ms. Crawford that Ms. McIver's duties at head of the HBCU Fellowship program were being reassigned to one of Ms. McIver's subordinates, a clear act of retaliation for Ms. McIver having reported her concerns about Ms. Crawford's racial references to SPS HR just days earlier.

78.    The subordinate to whom Ms. McIver's HBCU Fellowship program duties were reassigned had been told of the change five days earlier (coincidentally, Ms. McIver

happened to be on a scheduled day off that day), just four days after Ms. McIver reported her concerns about Ms. Crawford to SPS HR.

79. Less than a month later, in May 2023, senior associate director Barbara McGloin informed Ms. McIver that she was being demoted from her position as leader of the e-mentor program, because "this is what Kelly Ahn wants," according to Ms. McGloin.

80. These demotions were humiliating acts of retaliation perpetrated by Defendants upon Ms. McIver following her complaint to SPS HR in early April 2023.

81. That same month, Ms. McIver was asked to join the curriculum committee and assigned a video library project, involving creation of scripts and slide decks, for which Ms. McIver was promised the assistance of an APEX intern, however no such intern was ever assigned to assist Ms. McIver with the assigned project.

82. Despite not having the support promised to her, Ms. McIver completed the video project on time, however Diane Spizzirro only started but did not complete the process of reviewing and approving the completed project (CDL leadership typically reviews and approves slide decks and scripts).

83. Ms. Spizzirro's failure to review the completed video library project resulted in Ms. McIver receiving a negative performance review relating to the project at her

July 26, 2023, review meeting with Mr. Slotnick.

84.    When Ms. McIver questioned Mr. Slotnick about the unfairness relating to his negative performance review, especially in light of his having given her no negative feedback whatsoever during any of their prior weekly meetings, he stated that reviews "don't really matter".

85.    At that same performance review meeting on July 26, 2023, Ms. McIver reminded Mr. Slotnick of her contribution to the CDL Youth in Science Technology Engineering and Mathematics ("STEM") team, where Ms. McIver secured three youth in STEM-engaged industry mentors, one of which won the presentation challenge with her team at the culminating reception and award ceremony on Friday, June 7, 2023, at which Ms. McIver was the only CDL staff member present, despite Ms. Ahn, Ms. Spizzirro and Associate Director Nicole Arndt all being part of the team.

86.    Following the successful event, Ms. McIver was told by Kelly Ahn and Diane Spizzirro to no longer communicate directly with her CDL external SPS counterpart and that all communication had to go through CDL senior leadership.

87.    On October 30, 2023, upon connecting to what Ms. McIver had expected to be a regular weekly Zoom meeting with Mr. Slotnick, the meeting was instead with SPS HR representative Tonya Insani, who issued a verbal warning to Ms. McIver regarding her work performance, stating that Ms.

McIver's failure to demonstrate improvement "will lead to further disciplinary action up to and including termination."

88. Such verbal warning was unsubstantiated and unwarranted, as no substantiation or tangible evidence of any alleged performance deficiencies on the part of Ms. McIver was presented at the October 30, 2023, surprise meeting with Ms. Insani.

89. Ms. McIver soon submitted a rebuttal response and inquiry to Ms. Insani, however no response or even acknowledgment was received by Ms. McIver.

90. Following the October 30, 2023, meeting with Ms. Insani of SPS HR, Ms. McIver continued to meet with Mr. Slotnick on a weekly basis, at which meetings they discussed the projects Ms. McIver was working on, without incident, as well as the high number of student coaching appointments Ms. McIver had completed.

91. During FY 2022, 2023 and 2024, only one out of 22 CDL staff members completed more student coaching appointments than the 1,129 appointments completed by Ms. McIver during that three-year period.

92. On January 11, 2024, Ms. McIver was again "ambushed" at what she expected to be another regular weekly meeting with Mr. Slotnick, when instead again HR representative Insani appeared instead and informed Ms. McIver that she was being given a final written warning regarding her performance.

93.     Again, no specificity or supporting evidence was provided by Ms. Insani at the January 11, 2024 meeting to substantiate any purported poor performance on the part of Ms. McIver, and appear to be nothing more than a baseless and false pretext by Defendants to fabricate a record of poor performance by Ms. McIver in order to lay the groundwork for a potential termination of employment.

94.     Throughout 2023 and 2024, whenever Ms. McIver received any negative feedback on her performance, feedback which was false and without factual basis, she responded with written rebuttals and requested meetings with CDL senior leadership in order to discuss each performance-related matter promptly upon receiving any negative feedback, however no such meetings were ever granted.

95.     Ms. McIver made multiple written requests for such meetings in February 2023, May 2023, November 2023 and January 2024.

96.     On January 16, 2024, Ms. McIver emailed SPS senior leadership, including Dean Troy Eggers, Senior Vice Dean Steven Cohen, Senior Associate Dean Zelon E. Crawford, Senior Associate Dean Louise Rosen, HR Associate Dean Meridith Kerby, HR Director Tonya Insani, and HR Director Nic Davila, informing them about the toxic work environment and ongoing discrimination, retaliation and harassment I have endured at CDL.

97. Not a single recipient of Ms. McIver's January 16, 2024 email acknowledged the contents of her message. Only HR Associate Dean Merideth Kerby responded, telling Ms. McIver that she should continue to work with her manager, Mr. Slotnick.

98. Ms. Kerby's email response falsely stated that "your manager regularly shares performance concerns and expectations with you during 1:1 meetings".

99. Ms. Kerby's statement is a blatant falsehood, since Mr. Slotnick did not share any critical performance reviews with Ms. McIver at any of their regular weekly meetings, and a clear sign that SPS HR was actively participating in ignoring and silencing Ms. McIver about her treatment by CDL senior leadership.

100. Ms. McIver has never been placed on a performance plan, or performance improvement plan, at any time during her career at Columbia SPS CDL.

101. Having lost all confidence in the integrity of SPS HR, on January 19, 2024, Ms. McIver emailed Columbia Central HR and over the course of the next several weeks had multiple meetings with that department, however no resolution was reached and ultimately on March 20, 2024, Ms. McIver was offered a "graceful exit" from Columbia CDL.

102. Ms. McIver then informed Columbia Central HR that she had already previously been identified, during the

preceding months, as a finalist for two roles within other schools at the University: 1) a senior director position within SIPA's Career Advancement Center; and 2) a director position within the IEOR Career Placement Office.

103. However, despite neither of those two positions involving CDL senior leadership as internal references as part of the application process, Ms. McIver was then informed by a Columbia central HR representative that internal candidates are subject to feedback from their current superiors, and that she could not move to another department within the University due to "negative internal feedback".

104. Upon information and belief the source(s) of this "negative internal feedback" was/were defendants Ahn, Crawford, Slotnick and/or Spizzirro.

105. CDL Senior Leadership's repeated refusal to meet with Ms. McIver regarding any issues with her performance during 2023 and 2024, along with any "negative internal feedback" they provided to other University departments in connection with Ms. McIver's pursuit of a new position, was in retaliation for Ms. McIver having reported her concerns about discrimination and a toxic work environment at Columbia CDL.

106. Plaintiff's contributions to key CDL initiatives such as the HBCU Fellowship and E-Mentoring programs were intentionally diminished and minimized by CDL senior

leadership, who presented these initiatives, which had been led by Ms. McIver, as collective team accomplishments, even giving white colleagues of Ms. McIver individual recognition for these initiatives, while overlooking Ms. McIver's contributions and thereby undermining her visibility as a significant contributor within CDL.

107. Despite Ms. McIver mid-2021 promotion to Associate Director, she was discriminatorily excluded by the defendants from key decision-making discussions and denied opportunities to lead after June 2022, as exemplified by having her leadership roles in major initiatives she had previously and successfully led, such as the HBCU Fellowship and e-Mentorship programs, reassigned to less experienced, younger subordinates and white employees of CDL.

108. These discriminatory, marginalizing actions, following four years of hard work and successful outcomes generated by Ms. McIver at CDL, were humiliating to Ms. McIver.

109. Other discriminatory actions by Defendants included the January 2022 awarding of "off-cycle" promotions of two white women at CDL, including one who was promoted to senior associate director, without even requiring any formal application process, while also expressly discouraging minority CDL employees from applying for the same or similar promotions.

110.   Ms. McIver and other minorities at CDL were subjected to heightened scrutiny and required to adhere to stricter standards during the past three years when seeking to apply for promotions, performing work necessary to earn promotions, and even when performing routine tasks such as completing course assignments, standards white employees were not held to by Defendants.

111.   As an example, a white CDL staff member assigned to teach the CDL Internship Course Spring 2024 was allowed to block off time during regular work hours to grade student assignments, whereas Ms. McIver was informed by Diane Spizzirro that Ms. McIver would not be permitted to do the same when she was teaching the internship course because teaching the internship course was considered supplemental income work and that all course-related work was required to be completed outside of her regular CDL work schedule.

112.   Prior to Ms. McIver's promotion to Associate Director in 2021, Ms. Ahn had remarked to Ms. McIver that "I'll need you to take on more responsibility to show you are prepared to be an Associate Director."

113.   During the same period, a less experienced, white CDL staff member was also promoted to Associate Director without having similarly taken on added responsibility to earn such promotion, and was even credited with projects Ms. McIver's had been primarily responsible for executing.

114.    During a 2021 Zoom meeting of the entire CDL team, led by Ms. Spizzirro, the promotions of Ms. McIver and the other white CDL staff member, each to Associate Director, were announced, however the announcement focused primarily on the white staff member's involvement in the Crown Program Project, managed by Ms. McIver, while failing to highlight Ms. McIver's significant contribution. This omission diminished Ms. McIver's accomplishments and undermined her credibility with her CDL colleagues.

115.    Ms. McIver then questioned Ms. Spizzirro about such distinct preferential treatment of the promoted white colleague during the team-wide Zoom meeting, to which Ms. Spizzirro responded that the white colleague "had been promised the position" before the promotion, a stark example of internal favoritism shown to non-minorities at CDL.

116.    During this conversation, Ms. Spizzirro also emphasized CDL leadership's aim and preference to protect internal CDL staffing decisions from any Faculty Affairs override which might result from any inquiry into CDL hiring and promotion decisions and practices.

117.    CDL leadership accomplished that aim, in part, by limiting hiring committee participation to CDL staff members only, a practice that restricted transparency and oversight, violated best hiring practices, enabled unchecked favoritism and discriminatory practices and was deemed unethical by

Columbia SPS HR representative Mary Jo Lynch and former SPS Senior Associate Dean.

118.   In another example of discriminatory practices, Defendants awarded several white CDL employees with promotions to Associate Director or Senior Associate Director without adherence to proper hiring and promotion protocols, characterizing these promotions as "off-cycle" or "promised" promotions, bypassing the standard application and selection process.

119.   At the same time, Ms. McIver and other minority CDL employees were required to meet stricter standards for promotion.

120.   This discriminatorily disparate application of promotion criteria within CDL demonstrates a pattern of bias, favoritism and inequitable treatment within the CDL's promotion process and even within its management practices.

121.   An example of CDL's biased management practices has occurred repeatedly with respect to a white male assistant director who joined CDL in February 2020.  Despite multiple issues having been raised by CDL colleagues about his performance, his direct supervisor was discouraged by senior CDL leadership from "writing up" the poor performing assistant director, who was hired at a higher compensation rate compared to more qualified, minority CDL assistant directors who were on the CDL staff at the time he was hired.

122. These biased, inequitable practices created a hostile and biased work environment at CDL, which disproportionately affected black and other minority CDL employees who were systematically excluded from fair consideration for promotion or other leadership roles, or who saw their leadership roles removed and demotions in their assigned responsibilities, as happened to Ms. McIver when she was removed from leadership of the HBCU Fellowship and E-Mentoring programs and later demoted from teaching the summer internship course.

123. Ms. McIver's leadership roles in those programs were reassigned to less qualified subordinates or white CDL employees, without any formal review, evaluation or cause, in disregard of her established expertise and previous contributions at CDL.

124. These discriminatory, retaliatory demotions of Ms. McIver from core duties diminished her role and influence at CDL and reinforced a pattern of bias and retaliation disguised as operational staffing decisions.

125. Two minority CDL staff members, one black and the other Hispanic, resigned in August 2023 and March 2024 respectively, because of these type inequitable, discriminatory practices by Defendants.

126. On April 12, 2024, in another act of retaliation against Ms. McIver, she was demoted from her role as CDL

Internship Course instructor and prohibited from teaching the Summer 2024 Course, despite having successfully taught the course in 2021, 2022 and 2023, and despite having already been approved by Mr. Slotnick on March 6, 2024, to teach the Summer 2024 course again.

127.  This demotion from teaching the internship course resulted in a decrease in Ms. McIver's compensation, as well as further humiliation resulting from Ms. McIver still being required to complete a series of instructional videos for the internship course, which videos were used in teaching the course despite her having been demoted from the internship teaching position after having successfully taught it for three consecutive years prior.

128.  As recently as November 12, 2024, Diane Spizzirro copied a slide deck Ms. McIver had created for the Youth in STEM Initiative programming which Ms. McIver had facilitated with no direction or support from any other CDL staff members and inserted it in a shared folder titled "Diane's Old Presentation Decks", naming herself as the owner.

129.  In what is a prototypical example of how defendants have consistently diminished and discredited Ms. McIver's contributions and work at CDL for the past three years, the slide deck is now being used as if it were an original deck Ms. Spizzirro had created herself.

130.  The pattern of unlawful conduct by Defendants

described herein directly and negatively impacted Ms. McIver's ability to perform her duties, her job satisfaction and her emotional well-being during the applicable statute of limitations period.

131. Especially after she first complained about the discriminatory practices at CDL, Ms. McIver no longer received the same support in her position that other non-black employees or employees who had not complained about discrimination at CDL.

132. Despite Ms. McIver's repeated and good-faith complaints about race discrimination at CDL over the past two years, Defendants wholly ignored the law and its own anti-discrimination and anti-retaliation policies, as indicated by the fact that no corrective action was taken.

133. Ms. McIver does not believe that Columbia appropriately investigated her complaints of discrimination and retaliation, and only paid lip service to those hollow policies and to its stated mission "to attract a diverse and international faculty, staff and student body" as the University's website proclaims.

134. As a result of Defendants' discrimination and retaliation, Ms. McIver has incurred substantial economic damages as a result of being demoted from her teaching role in 2024.

135. As a result of Defendants' discrimination and

retaliation, Ms. McIver has suffered significant emotional distress.

136.    During the first 2-3 years of her employment at CDL, Ms. McIver was comfortable, confident and happily engaged in contributing her skills and experience toward CDL's mission for students.

137.    However, as a result of Defendants' discrimination and retaliation, Ms. McIver was repeatedly humiliated and embarrassed.

138.    Defendants' unlawful discriminatory and retaliatory actions have caused Ms. McIver to worry about her professional future, lose self-esteem, and suffer acute emotional distress.

139.    Ms. McIver's distress has also manifested itself in physical symptoms including anxiety, nausea, bouts of crying, fatigue, digestive/gastrointestinal issues, insomnia, panic attacks, heart palpitations, nightmares, loneliness, and social withdrawal.

140.    As a result of Defendants' discriminatory and retaliatory conduct, Ms. McIver has even lost confidence in her professional abilities and is even unable to enjoy activities and relationships as she once did prior to being subjected to Defendants' unlawful actions.

141.    On May 2, 2024, Ms. McIver began a medical leave of absence from CDL because of the cumulative and severe mental,

physical and emotional impact suffered as a result of Defendants' actions described above.

141. Ms. McIver has been undergoing regular psychotherapy since that time to treat the anxiety and emotional distress she suffers from as a result of Defendants actions.

143. Even during her medical leave, Ms. McIver has continued to experience bullying tactics by Columbia HR and Columbia Leave Management.

144. During August 2024, Columbia Leave Management Director Hana Bloch persistently and repeatedly pressured Ms. McIver to waiver her HIPAA rights.

145. During October 2024, Columbia HR representative Tonya Insani unilaterally terminated Ms. McIver's paid leave prior to the date approved by Columbia's leave program benefits insurance carrier, New York Life, and forced Ms. McIver to use accrued vacation time/pay to replace the leave benefits lost as a result of Ms. Insani's actions, which accrued vacation pay has still not been paid to Ms. McIver.

## COUNT I

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## RACE DISCRIMINATION

146. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

147.   At all relevant times, Plaintiff was and is black employee of Defendants.

148.   At all relevant times, Defendants were and are Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964.

149.   Defendants subjected Plaintiff to discrimination, on the basis of her race, in denying her equal terms, conditions, and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, by demoting her, preventing her from advancement, and paying her less than other non-black employees.

150.   As a direct and proximate result of Defendants' unlawful discriminatory conduct during the applicable statute of limitations period in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which she is entitled to an award of monetary damages.

151.   As a direct and proximate result of Defendants' unlawful discriminatory conduct during the applicable statute of limitations period in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress including but not limited to embarrassment, humiliation, stress, anxiety and emotional pain and suffering for which she is entitled to compensatory damages.

152.   Defendants' unlawful and discriminatory conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Plaintiff and was done with conscious or reckless disregard of her rights under the law, entitling her to punitive damages.

## COUNT II
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## RETALIATION

153. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

154. At all relevant times, Plaintiff was and is a black employee of Defendants.

155. Plaintiff engaged in protected activity and Defendants were aware of Plaintiff's protected activity.

156. Plaintiff opposed the unlawful treatment to which she was being subjected by complaining to various employees and agents of Defendants.

157. Defendants' practices opposed by Plaintiff constitute colorable violations of Title VII of the Civil Rights Act of 1964.

158. Plaintiff suffered actions what would be reasonably likely to deter a person from engaging in protected activity.

159. Defendants demoted Plaintiff from her responsibilities as HBCU Fellowship Program leader and Summer Internship Course Instructor.

160. There was a causal connection between Plaintiff's protected activities and Defendants' actions.

161. Defendants subjected Plaintiff to such actions because of and in retaliation for Plaintiff's protected

35

activities.

162.   By reason of the continuous nature of Defendants' retaliatory conduct, Plaintiff is entitled to application of the continuing violation doctrine to the unlawful acts alleged herein.

163.   Defendants' actions amount to willful and wanton negligence and/or recklessness, and/or exhibit a conscious disregard for the rights of Plaintiff, and/or constitute conduct so reckless as to amount to such disregard.

164.   Accordingly, Plaintiff is entitled to punitive damages.

165.   As a direct and proximate result of Defendants' unlawful conduct during the applicable statute of limitations period in violation of Title VII, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and lost future employment opportunities.

166.   As a direct and proximate result of Defendants' unlawful discriminatory conduct during the applicable statute of limitations period in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress including but not limited to embarrassment, humiliation, stress, anxiety and emotional pain and suffering for which she is entitled to compensatory damages.

167.   Plaintiff has additionally suffered irreparable injury that remedies available at law, such as monetary

damages, are inadequate to compensate for and that, considering the balance of hardships between Plaintiff and Defendants, entitle Plaintiff to an equitable remedy such as a permanent injunction, which would not disserve the public.

168. As a result of Defendants' unlawful conduct, Plaintiff is entitled to all remedies available for violations of Title VII of the Civil Rights Act of 1964, including injunctive relief, backpay, front pay, compensatory damages, punitive damages, attorneys' fees and costs, and/or other appropriate relief.

**COUNT III**
**SECTION 1981**
**RACE DISCRIMINATION**

169. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

170. Defendants subjected Plaintiff to discrimination, on the basis of her race, in denying her equal terms, conditions, and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, by demoting her, preventing her from advancement, and paying her less than other non-black employees to whom she should have been compared, in violation of Section 1981.

171. As a direct and proximate result of Defendants' unlawful discriminatory conduct during the applicable statute of limitations period in violation of Section 1981, Plaintiff has suffered and continues to

suffer monetary and/or economic harm, for which she is entitled to an award of monetary damages.

172.    As a direct and proximate result of Defendants' unlawful discriminatory conduct during the applicable statute of limitations period in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress including but not limited to embarrassment, humiliation, stress, anxiety and emotional pain and suffering for which she is entitled to compensatory damages.

173.    Defendants' unlawful and discriminatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff and was done with conscious or reckless disregard for her rights under the law, entitling her to punitive damages.

**COUNT IV**
**SECTION 1981**
**RETALIATION**

174.    Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

175.    Defendants retaliated against Ms. McIver by demoting her, by denying her equal terms and conditions of employment, and by depriving her of compensation because of her complaints about race discrimination, in violation of Section 1981.

176.    As a direct and proximate result of Defendants' unlawful retaliatory conduct during the applicable statute of limitations period in violation of Section 1981, Plaintiff has

suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and lost future employment opportunities, for which she is entitled to an award of monetary damages.

177. As a direct and proximate result of Defendants' unlawful discriminatory conduct during the applicable statute of limitations period in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress including but not limited to embarrassment, humiliation, stress, anxiety and emotional pain and suffering for which she is entitled to compensatory damages.

178. Defendants' unlawful retaliatory actions constitute a willful and wanton violation of Section 1981, were outrageous and malicious, were intended to injure Ms. McIver, and were done with conscious or reckless disregard for the rights of Plaintiff under the law, entitling her to punitive damages.

**COUNT V**
**NEW YORK STATE HUMAN RIGHTS LAW ("NYSHRL")**
**RACE DISCRIMATION**

179. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

180. Defendants subjected Plaintiff to discrimination, on the basis of her race, in denying her equal terms, conditions, and privileges of employment by demoting her, preventing her from advancement, and paying

her less than other non-black employees to whom she should have been compared, in violation of the NYSHRL.

181.    As a direct and proximate result of Defendants' unlawful discriminatory conduct during the applicable statute of limitations period in violation of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which she is entitled to an award of monetary damages.

182.    As a direct and proximate result of Defendants' unlawful discriminatory conduct during the applicable statute of limitations period in violation of the NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress including but not limited to embarrassment, humiliation, stress, anxiety and emotional pain and suffering for which she is entitled to compensatory damages.

183.    Defendants' unlawful and discriminatory conduct constitutes a willful and wanton violation of the NYSHRL, was outrageous and malicious, was intended to injure Plaintiff and was done with conscious or reckless disregard for her rights under the law, entitling her to punitive damages.

## COUNT VI
## NEW YORK STATE HUMAN RIGHTS LAW ("NYSHRL")
## RETALIATION

184.    Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

185.    Defendants retaliated against Ms. McIver by demoting her, by denying her equal terms and conditions of

employment, and by depriving her of compensation because of her complaints about race discrimination, in violation of the NYSHRL.

186.  As a direct and proximate result of Defendants' unlawful retaliatory conduct during the applicable statute of limitations period in violation of the NYSHRL, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and lost future employment opportunities, for which she is entitled to an award of monetary damages.

187.  As a direct and proximate result of Defendants' unlawful retaliatory conduct during the applicable statute of limitations period in violation of the NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress including but not limited to embarrassment, humiliation, stress, anxiety and emotional pain and suffering for which she is entitled to compensatory damages.

188.  Defendants' unlawful retaliatory actions constitute a willful and wanton violation of the NYSHRL, were outrageous and malicious, were intended to injure Ms. McIver, and were done with conscious or reckless disregard for the rights of Plaintiff under the law, entitling her to punitive damages.

**COUNT VII**
**NEW YORK CITY HUMAN RIGHTS LAW ("NYCHRL")**

## RACE DISCRIMINATION

189.    Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

190.    Defendants subjected Plaintiff to discrimination, on the basis of her race, in denying her equal terms, conditions, and privileges of employment by demoting her, preventing her from advancement, and paying her less than other non-black employees to whom she should have been compared, in violation of the NYCHRL.

191.    Defendants subjected Plaintiff to discrimination, on the basis of her race, in denying her equal terms, conditions, and privileges of employment by demoting her, preventing her from advancement, and paying her less than other non-black employees to whom she should have been compared, in violation of the NYCHRL.

192.    As a direct and proximate result of Defendants' unlawful discriminatory conduct during the applicable statute of limitations period in violation of the NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which she is entitled to an award of monetary damages.

193.    As a direct and proximate result of Defendants' unlawful discriminatory conduct during the applicable statute of limitations period in violation of the NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress including but not limited to embarrassment, humiliation, stress, anxiety and emotional pain and

suffering for which she is entitled to compensatory damages.

194. Defendants' unlawful and discriminatory conduct constitutes a willful and wanton violation of the NYCHRL, was outrageous and malicious, was intended to injure Plaintiff and was done with conscious or reckless disregard for her rights under the law, entitling her to punitive damages.

### COUNT VIII
### NEW YORK CITY HUMAN RIGHTS LAW ("NYCHRL")
### RETALIATION

195. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

196. Defendants retaliated against Ms. McIver by demoting her, by denying her equal terms and conditions of employment, and by depriving her of compensation because of her complaints about race discrimination, in violation of the NYCHRL.

197. As a direct and proximate result of Defendants' unlawful retaliatory conduct during the applicable statute of limitations period in violation of the NYCHRL, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and lost future employment opportunities, for which she is entitled to an award of monetary damages.

198. As a direct and proximate result of Defendants' unlawful retaliatory conduct during the applicable statute of limitations period in

violation of the NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress including but not limited to embarrassment, humiliation, stress, anxiety and emotional pain and suffering for which she is entitled to compensatory damages.

199.    Defendants' unlawful retaliatory actions constitute a willful and wanton violation of the NYCHRL, were outrageous and malicious, were intended to injure Ms. McIver, and were done with conscious or reckless disregard for the rights of Plaintiff under the law, entitling her to punitive damages.

**COUNT IX**
**NY LABOR LAW**
**RACE-BASED PAY DISCRIMINATION**

200.    Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

201.    During the applicable statute of limitations period, Defendant Columbia University discriminated against Ms. McIver in violation of NYLL § 194 by paying non-black employees higher wages than she received for equal work in a position which required at least equal skill, effort and/or responsibility and which she at least performed under similar working conditions, or for substantially similar work when viewed as a composite of skill, effort and responsibility, and performed under similar working conditions, and often more challenging circumstances.

**COUNT X**
**AGE DISCRIMINATION IN EMPLOYMENT ACT**
**AGE DISCRIMINATION**

202. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

203. Plaintiff was and is an employee of defendants Columbia University and SPS CDL who is over the age of 40.

204. Defendants Columbia University is Plaintiff's employer within the meaning of the Age Discrimination in Employment Act of 1967 ("ADEA").

205. Defendants subjected Plaintiff to discrimination in the terms, conditions, and privileges of employment in violation of the ADEA, including age-based failure to promote and pay discrimination.

206. Defendants have treated Plaintiff differently from and less preferably than younger employees.

207. Plaintiff's age has been a determining factor in Defendants' subjecting Plaintiff to discrimination in the terms, conditions and privileges of employment.

208. By reason of the contentious nature of Defendants' discriminatory conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

209. Defendants' actions constitute willful or wanton

negligence and/or recklessness, and/or exhibit a conscious disregard for the rights of Plaintiff, and/or constitute such recklessness as to constitute such disregard.

210.  As a direct and proximate result of Defendants' unlawful retaliatory conduct during the applicable statute of limitations period in violation of the ADEA, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and lost future employment opportunities, for which she is entitled to an award of monetary damages.

211.  As a direct and proximate result of Defendants' unlawful retaliatory conduct during the applicable statute of limitations period in violation of the ADEA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress including but not limited to embarrassment, humiliation, stress, anxiety and emotional pain and suffering for which she is entitled to compensatory damages.

212.  Defendants' unlawful discriminatory actions constitute a knowing and intentional violation of the ADEA, entitling her to liquidated damages.

213.  As a result of Defendants' unlawful conduct, Plaintiff is entitled to all remedies available for violations of the ADEA, including injunctive relief, back pay, front pay, liquidated damages, attorneys' fees and costs, and/or other appropriate relief.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

    a. Front pay;

    b. Back pay;

    c. Punitive damages;

    d. Emotional Distress damages;

    e. An award of prejudgment and postjudgment interest;

    f. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

    g. Such other, further, and different relief as this Court deems just and proper.

Dated: January 2, 2025

                */s/ Michael Samuel*
                Michael Samuel (MS 7997)
                THE SAMUEL LAW FIRM
                1441 Broadway - Suite 6085
                New York, New York 10018
                (212) 563-9884
                *Attorneys for Plaintiff*